1  **David M. Grey.**, Esq.  Bar #124793
   david@greyslaw.com
2  GREY & GREY
   233 Wilshire Boulevard, Suite 700
3  Santa Monica, CA 90401
   310/444-1980   fax 310/444-1970
4
   Attorneys for Plaintiff
5  K.M. by and through her
   Guardian Ad Litem Lynn Bright.
6

7

8                  **UNITED STATES DISTRICT COURT**

9                  **CENTRAL DISTRICT OF CALIFORNIA**

10
   K.M., a minor, by and through her          Case No.  SACV 10-01011 DOC
11 Guardian Ad Litem, LYNN BRIGHT,            (MLGx)

12            Plaintiff,
                                              **Memorandum of Points and Authorities in**
13                                            **Support of Motion for Summary**
         v.                                   **Judgment by K.M.**
14
                                              Date:  5/2/11
15 TUSTIN UNIFIED SCHOOL DISTRICT,           Time: 8:30 a.m.
   Defendant.                                 Court Rm. :   9D [Hon. David O. Carter]
16

17

18

19         This is a motion for partial summary judgment. K.C. seeks an order that Tustin

20 provide her with CART (computer assisted real time captioning) for academic classes at

21 school. The crux of this dispute is Tustin's refusal to provide K.C., who is deaf, with an

22 equal opportunity for communication access as required by Education Code §56345(d),

23 IDEA, the ADA, Section 504, and the Unruh Act.

24

25

26

27

28

## <u>Table of Contents</u>

I. INTRODUCTION ............................................................................................... 6

II. SUMMARY OF FACTS ................................................................................... 7

III. TUSTIN'S REFUSAL TO PROVIDE K.M. WITH CART UNDER THE ADA, SECTION 504 AND UNRUH IS DISCRIMINATION ............................................................ 9

    A. ADA ....................................................................................................... 9

    B. 504 .... ................................................................................................... 11

    C. Unruh .................................................................................................... 11

    D. Tustin's Refusal to Provide K.M. with CART was Discrimination because she was Deprived Access to The Spoken Word at School Solely because of her Disability ......................................................................................... 12

III. THE OAH DECISION REJECTING CART FOR K.M. WAS INCORRECTLY DECIDED AND SHOULD BE REVERSED ........................................................... 16

    A. Standard of Review .............................................................................. 16

    B. Summary Special Education Law ......................................................... 17

    C. Communication Access Is a State Standard and Necessary Element To Provide Deaf Students FAPE .............................................................. 18

        1. Consider And Discuss Must Be Meaningful And Requires More Than Merely Just Talking About Communication Access At The IEP .............. 19

            i. IDEA's procedural requirement must be rigorously enforced and strictly reviewed for compliance .................................................... 19

            ii. Procedural compliance must be meaningful ........................................ 20

            iii. Tustin had to do more than just discuss services necessary to provide K.M. with an equal opportunity for communication access for there to be meaningful procedural compliance .......... 21

        2. Provision of CART Is Consistent With Rowley And Meets K.M.'s Unique Needs .................................................................................................... 23

            i. Compliance with California state standards for educating deaf students is part of the Rowley FAPE analysis ............................. 23

            ii. CART is an appropriate service that facilitates communication access for deaf students .............................................................. 24

    D. The Evidence Established The Need For Cart At the IEP Meetings Contrary to The ALJ's Conclusion ....................................................................... 25

IV. CONCLUSION ............................................................................................. 26

Memorandum of Points and Authorities in Support of Motion for Summary Judgment by K.M.

1

2

## Table of Authorities

**CASES**

3

Bd. Of Educ. Of Hendrick Hudson Central Sch. Dist. V. Rowley (1982) 458
  U.S. 176, 182 ........................................................................................17

Bd. Of Education of the Hendrick Hudson Central Sch. Dist. v. Rowley 458
  U.S. 176 (1982) ........................................................................17, 18, 23

Board of Education of the Hendrick Hudson Central School District v.
  Rowley (1982) 458 U.S. 176 ..................................................................19

Breece v. Alliance Tractor Trailer Training II, Inc. (1993)  824 F. Supp 576 ...................10

Butt v. state of California (1992) 4 Cal. 4th 668 ...............................................22

Capistrano Unified Sch. Dist. V. Wartenberg 59 F. 3d 884, 891 (9th Cir.
  1995) ....................................................................................................17

Daniel R.R. V. State Board of Education  874  F. 2d 1036 (5th Cir. 1989)..................19

Deal v. Hamilton County Board of Education (6th Cir. 2005) 392 F.3d 840 ..................20

Dong ex rel. Dong v. Board of Education of the Rochester Community
  School (6th Cir. 1999) 197 F.3d 793 ......................................................20

Duvall v. County of Kitsap (9th Cir. 2001) 260 F.3d 1124 .................................10

Gregory K. v. Longview School District (9th Cir. 1987) 811 F.2d 1307 ...........18

Jackson v. Pasadena City School District (1963) 59 Cal. 2d 876 .....................22

Jackson v. school Board 806 F. 2d 623, 630. (5th Cir. 1986)...........................19

Mark H. v. Lemahieu (2008 9th Cir.) 513 F.3d 922, 933....................................11

Mayberry v. Von Valtier (1994) 843 F. Supp. 1160 .........................................10

Ms. C ex rel. NL v Knox County Schools (6th Cir. 2003) 215 F.3d 688 ...........20

N.B. v. Hellgate Elementary Sch. Dist., 541 F.3d 1202, 1207 (9th Cir. 2008)...........17, 23

Ojai Unified School Dist. v. Jackson 4 F.3d 1467, 1471 (9th cir. 1993) ..........16, 17

Schaffer v. Weast (2005) 546 U.S. 49 ............................................................20

Union School District v. Smith (9th Cir. 1994) 15 F.3d 1519...............................19

Vargas v. Hampson (1962) 57 Cal.2d 479........................................................12

W.G. v. Bd. Of Trustees of Target Range Sch. Dist., (9th Cir. 1992) 960 F.
  2d 1479 ...............................................................................................17

3

W.G. v. Board of Trustees of Target Range School District No 23,
Missoula, Montana (9th Cir. 1992) 960 F. 2d 1479 ......................................20

Winkelman v. Parma City School District (2007) 550 U.S. ___ ...................20, 21

**STATUTES**

20 U.S.C §1401(29) .......................................................................................23

20 U.S.C 1414(d)(3)(B)(iv) .............................................................................18

20 U.S.C. §1400(c ...........................................................................................17

20 U.S.C. §1401(14) .......................................................................................17

20 U.S.C. §1414(d)(3)(B)(iv) ..........................................................................23

20 U.S.C. §1415(a ...........................................................................................17

20 U.S.C. §1415(i)(2)(C)(ii). ...........................................................................16

20 U.S.C. 1400 .................................................................................................16

20 U.S.C. 1414(d) ............................................................................................17

42 U.S. C. §12101 ..............................................................................................9

42 U.S.C. §12131 (1) .......................................................................................10

42 U.S.C. §12132 .............................................................................................10

56341.1 (b)(4) ...................................................................................................23

Civil Code §51 ..................................................................................................12

Education Code §56000.5(b)(2) .......................................................................19

Education Code §56000.5(b)(2)) ......................................................................21

Education Code §56000.5(b)(4) ..................................................................18, 21

Education Code §56000.5(b)(7) ..................................................................18, 21

Education Code §56341.1 .................................................................................24

Education Code §56345(d) ............................................................................1, 18

**OTHER AUTHORITIES**

Student v. Glendora Unified School District, OAH Case #2007080893 ............24

Student v. Glendora Unified School District, OAH Case #N2006110090 .........24

*Student v. Poway Unified School District*, OAH Case # 2009070998 ...............25

4

**REGULATIONS**

28 C.F.R. §35.1160 App. A ............................................................................................. 11

28 CFR §35.160 ............................................................................................................... 19

34 CFR § 104.31 -104.39 ................................................................................................ 11

34 CFR § 104.33(b) ......................................................................................................... 11

34 CFR 101(c)(1). ............................................................................................................ 18

5

Memorandum of Points and Authorities in Support of Motion for Summary Judgment by K.M.

## I. INTRODUCTION

K.M. is deaf and by all accounts misses words spoken in the classroom by her teachers and other students. K.M. needs CART, a type of speech to text transcription, to access the words spoken in class that she does not hear. A CART captionist is very similar to a court reporter using a stenography machine.  The captionist converts the words spoken in the classroom into text that is displayed in real time on a laptop computer screen so that the hearing impaired student can follow the teachers' lectures, other students' questions, class discussion and other oral information presented in the classroom as they occur. (Facts 16-20).

The ADA, Section 504, and the Unruh Act prohibits disability discrimination and requires accommodations that give the disabled full benefits, participation and access in public places and programs. K.M. has been denied communication access because she does not hear most of what her classmates say during class discussion and only some of what her teachers say.

K.M. also seeks reversal of an administrative special education due process Decision denying her CART.  The Decision found that Tustin met its obligations under IDEA and Education Code §56345(d) to consider opportunities for equal communication access by merely talking about some of K.M.'s needs at the IEP meetings. The Decision also found that that the IEP provided K.M. with a basic floor of opportunity and that Tustin was not obligated to maximize her education under IDEA.

Rights to full and effective communication access under the ADA and the Unruh Act are not limited to only a basic floor of educational opportunity like IDEA. These statutes emphasize full equality for the disabled.  Likewise, Section 504 provides broader protections than the IDEA and requires Tustin to provide education and services

6

to the disabled as adequately as the needs of non-handicapped persons are met.

The bottom line is that CART gives K.M. access to class discussions much in the same way that closed captioning allows the hearing impaired to follow dialogue on television and movies. Tustin refuses to give K.M. this access.

## II. Summary of facts

K.M. is a deaf high school student.  K.M. qualifies for special education because of her hearing loss.  K.M. has a cochlear implant in one ear and a hearing aid in another[1]. Cochlear implants have internal and external parts. The internal part is surgically placed into the head and directly stimulates the auditory nerve to provide a sense of sound based upon what the external component picks up.  A hearing aid merely amplifies sound.  Neither a cochlear implant nor hearing aid restores normal hearing.  Users of cochlear implants have a great deal of difficulty hearing in background noise and find it hard to make sense of environmental sounds like the low hum of an air conditioner. (Facts 1-15).

K.M. does not use sign language and instead uses spoken English as her preferred mode of communication.  K.M. augments what she can hear with lip reading and other visual cues. (Facts 21-57).

K.M. needs to focus very hard to hear what people say. She reads lips and needs to look at the person speaking to understand them.  K.M. has difficulty hearing and she misses a lot of what is said around her.  K.M. especially struggles hearing in noisy

---

[1] On February 24, 2011 K.M. received a second cochlear implant and no longer uses a hearing aid. It can take many months or even a few years before getting the full benefit of the second implant.  Even with a second implant normal hearing is never restored and there is always difficulty hearing in noise.

7

situations and when speaking with more than one person. K.M. misses some of what her teachers say and a lot of what is said by her classmates especially during class discussion.  This happens on a daily and almost constant basis. (Facts 21-57).

Not hearing what people say makes K.M. feel badly.  K.M. gets upset and feels left out when she cannot hear what is being said. She finds this frustrating and annoying. K.M. is sometimes reticent to speak up in class because she is not sure of what was said and does not want to look foolish. K.M. wants to fit in at school and appear just like any of her other classmates.  K.M. does not want to stand out by asking people to repeat words that they have spoken that she missed. K.M. will laugh in class just because she sees everyone else laughing, even when she does not hear the joke. Likewise, K.M. will nod her head and pretend she hears things when she doesn't because she wants to appear normal. (Facts 21-57).

In middle school, K.M. had a personal FM system. With the FM system the teacher would speak into a microphone. Whatever the microphone picked up would be electronically sent directly to K.M.'s cochlear implant.  K.M. did not like the FM system because it had static, picked up undesirable sounds like teacher movement and gave her headaches. K.M. stopped using the FM system in the middle of eighth grade. (Facts 55-57)

K.M. wants CART so that she can follow class discussion and other things said in class.  K.M. tried CART extensively and finds its word-for-word transcription very useful. K.M. tried TypeWell, a meaning-for-meaning transcription, and did not find it useful because she could not always find the words she was looking for on the screen and found it confusing, especially when compared to CART. (Facts 58-60).

Instead of agreeing to CART, Tustin is still pushing the FM system even though

8

K.M. does not like the FM system, the problems with static and transmission of undesirable sounds have not been resolved and give her headaches. This makes no sense because the FM system will not give K.M. access to class discussion which is where she has her greatest difficulty hearing.  In order for the FM system to be useful in allowing K.M. to hear class discussion, a microphone would have to be passed to each student before they spoke so their words could be transmitted to K.M. K.M.'s teachers have said that using a pass around microphone each time students speak in a discussion would not work. (Fact 74). According to the teachers, the classes are too large, with upwards of 35 students, and the discussions are just too fast paced. (Facts 61-112).

Notwithstanding all the difficulties that Tustin knows K.M. has hearing in class, they refuse to provide her with CART. Tustin continues to show K.M. uncaptioned videos, place her in portable classrooms which are acoustically difficult environments and insist on the FM system even though it will not provide her with the access she needs.

## III. TUSTIN'S REFUSAL TO PROVIDE K.M. WITH CART UNDER THE ADA, SECTION 504 AND UNRUH IS DISCRIMINATION

### A. ADA

The Americans with Disabilities Act (ADA) prohibits discrimination against individuals with disabilities. 42 U.S. C. §12101 et. seq. Title II of the ADA provides: "(N)o qualified individual with a disability shall, by reasons of such disability, be excluded from participation or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such public entity." 42 U.S.C. §12132. A

9

Memorandum of Points and Authorities in Support of Motion for Summary Judgment by K.M.

school district is a "public entity" within the meaning of Title II. 42 U.S.C. §12131 (1). Hearing impairment and deafness is a disability within ADA. *Breece v. Alliance Tractor Trailer Training II, Inc.* (1993) 824 F. Supp 576, *Mayberry v. Von Valtier* (1994) 843 F. Supp. 1160, See also *Duvall v. County of Kitsap* (9th Cir. 2001) 260 F.3d 1124 (hearing –impaired plaintiff survives summary judgment claim that superior court failed to provide real-time captioning of oral testimony).

The regulations promulgated under the ADA regarding communications provide:

(a) A Public entity shall take appropriate steps to ensure that communications with applicants, participants, and members of the public with disabilities are as effective as communications with others.

(b)(1) A public entity shall furnish appropriate auxiliary aids and services where necessary to afford an individual with a disability an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity conducted by a public entity,

(2) In determining what type of auxiliary aid and service is necessary, a public entity shall give primary consideration to the request of the individual with disabilities. 28 CFR §35.160[2].

The preamble to this regulation specifically states:

Deference to the request of the individual with a disability is desirable because of the range of disabilities, the variety of auxiliary aides and services, and different circumstances requiring effective communication. 28 C.F.R. §35.1160 App. A.

---

[2] Revised regulations went into effect March 15, 2011. The new regulations retain the protections already in place, but add additional protection including a prohibition of not relying upon a minor child to facilitate communication.

## B. 504

Section 504 of the Rehabilitation Act provides:

> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.  29. U. S. C. §794.

In addition to the general prohibition against discrimination, Section 504 imposes specific obligations on public schools, including a requirement to provide FAPE.  34 CFR § 104.31 -104.39. FAPE under 34 CFR § 104.33(b) requires education and services "designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met." FAPE under Section 504 requires a comparison between the manner in which the needs of disabled and non-disabled children are met, and focuses on the "design" of a child's educational program. *Mark H. v. Lemahieu* (2008 9th Cir.) 513 F.3d 922, 933.

The FAPE requirements in IDEA and in section 504 are overlapping but different. Id at 925. FAPE under IDEA does not involve a comparison between how the needs of the disabled and non-disabled are met as does FAPE under section 504.  Public schools like Tustin may not discriminate as prescribed by the statutory language (29 U.S.C. §794) and they must comply with the regulations to provide education to the disabled as adequately as it does to the non-disabled.

## C. Unruh

The Unruh Act, Civil Code §51 et. seq. provides for both general damages, statutory damages and injunctive relief. *Vargas v. Hampson* (1962) 57 Cal.2d 479

11

Specifically Civil Code §51 states:

> (b) All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever,

> * * *

> (f) A violation of the right of any individual under the Americans with Disabilities Act of 1990 (public law 101-336) shall also constitute a violation of this section. Civil Code §51.

### D. Tustin's Refusal to Provide K.M. with CART was Discrimination because she was Deprived Access to The Spoken Word at School Solely because of her Disability

Section 504 precludes exclusion from participation because of one's disability and requires *disabled students education be designed to meet their* needs *as adequately as non-disabled students*.  The ADA also precludes exclusion from participation because of disability and adds that *communications with the disabled must be as effective as communications with others*.  The Unruh Act uses somewhat broader language to ensure that the disabled are accorded full and equal advantages, services and privileges. An ADA violation is also an Unruh violation.

There is no dispute that K.M. is deaf and does not have the opportunity to hear what is said at school just like her typical hearing classmates.  K.M.'s biggest problem at

12

school is that she cannot follow class discussion. K.M. has trouble hearing with background noise like the hum of an air conditioner, or when people talk too fast, too softly or talk over one another. K.M. also needs to face the person speaking to hear them, or to read lips. K.M. also has difficulty taking her own notes because it is hard for her to look at the person talking, which helps her hear, and look down at her paper to write at the same time. (Fact 30 and 34).  K.M. has difficulty hearing what people say when they are behind her. K.M. has a harder time hearing in a portable classroom and when students talk over each other. K.M. has asked for additional teacher support on assignments when she did not understand all the discussion. K.M. is "sometimes reticent to speak because she's not sure what other students have said". (Fact 69).

Not hearing what people say annoys and frustrates K.M. and makes her feel badly.  K.M. pretends to hear what people around her say because she wants to appear normal and like everyone else.  K.M. will laugh when she sees others laughing just to fit in even if she did not hear the joke, or nod her head as someone is talking to appear as though she hears them. The plain and simple fact is K.M. has a lot of trouble hearing at school.

None of the alternatives proposed by Tustin, like the FM system, allow K.M. to hear her classmates or discussions in class. The pace of the discussions in class is just too fast to allow for passing a microphone to each student before they speak so that the FM system can transmit the words to K.M. K.M.'s teachers (Grexton and Lowenstein) make perfectly clear that this is not an effective option. Likewise, it is not realistic to expect the classroom teacher to repeat what each student says before moving on to the next comment.  The CART transcript from Ancient Civilizations and English show that student comments were almost never repeated in any event. (Fact 36).

13

K.M. explained how she is often shown videos in class that are not captioned.  It is very difficult for her to follow what is going on because she cannot hear. Notwithstanding the many times that K.M. has explained to Tustin her difficulties, they still continue to show uncaptioned videos, and insist that the FM system will solve all of her access problems.

Communication with K.M. at school is not as effective as with her typical hearing peers. K.M.'s peers do not have to struggle to hear what is said in class, or miss out on portions of class discussion.  K.M.'s classmates are able to fully access the audio feed from videos. Without CART K.M.'s educational needs are not being met as adequately as her non-disabled peers because none of them have to struggle to hear or miss out on significant amount of the words spoken in class.

K.M. is good student and averages mostly A's and B's.  However, this is not enough to prove that she is receiving equal access to the spoken word in class.  K.M. is highly motivated and an extremely hard worker.  She must work extra hard (harder and longer than her non-hearing impaired peers) to receive the good grades.  She must find ways to compensate for what she misses in class.  She gets extra help at home, and puts in many hours after school to try and supplement the material that she could not "hear" in class.  So, to deny her access to the spoken word by denying her use of CART, is in essence penalizing her for her tremendous work ethic, motivation, and determination to succeed.  K.M. suffers frustration and annoyance, and a feeling of always being on the "outside" due to her lack of hearing. She wants to fit in and pretends to hear when she does not. This is the price that K.M. pays because she is deprived of the opportunity to hear teachers and class discussion like the non-hearing impaired classmates do. K.M. does not have the same opportunity to hear what her classmates

14

take for granted. Communications with K.M. at school are certainly not as effective as with her non-hearing impaired classmates, given the price K.M. pays to bridge the gap between what is said and what she does not hear.

Achieving good grades is not the same as receiving equal access.  K.M. is receiving good grades in spite of her hearing loss.  K.M. is extremely bright and hard working; however, she is missing out on many of the words spoken at school and is entitled to full communication access regardless of her intelligence and ability to compensate for what she misses at a very huge cost to her health, well being and happiness.

Provision of CART would allow K.M. to access the words that she misses and to not have to concentrate so intently to capture oral information in the classroom.  CART levels the playing field for K.M.  There is no dispute that CART is an appropriate accommodation.  Nonetheless, Tustin refused to provide for it therefore depriving K.M. of her right to effective communication and to participate in school just like her non-disabled classmates with typical hearing.  By not providing K.M. with CART, Tustin has unfairly increased K.M.'s burden to be educated just like everyone else in violation of the ADA, Section 504 and the Unruh Act.

Nothing in the ADA, Section 504 or the Unruh Act says that only deaf students with sub par grades are allowed effective communication access.    K.M. requests an Order that Tustin provide her with CART at school under the ADA, Section 504 and the Unruh Act.

### III. THE OAH DECISION REJECTING CART FOR K.M. WAS INCORRECTLY DECIDED AND SHOULD BE REVERSED

The OAH Decision said that Tustin complied with its obligation to consider services necessary to provide K.M. with an opportunity for equal communication access merely by talking about it, but erred by not finding that the discussion had to be meaningful with an eye toward actually providing services to meet K.M.'s unique needs for communication access.  The ALJ was also deprived of the opportunity to consider evidence that Tustin went into the IEP meetings with a closed mind knowing full well it would deny CART and thinking only about how to justify its position at a due process hearing[3]. Moreover, the ALJ failed to address evidence that Tustin ignored its obligation to meet K.M.'s unique needs as a deaf student. (Facts 75-112 and 113-118).

### A. Standard of Review

Under IDEA (20 U.S.C. 1400 et. Seq.) a court "shall receive the records of the administrative proceeding, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines appropriate." *Ojai Unified School Dist. v. Jackson* 4 F.3d 1467, 1471 (9th cir. 1993).  Judicial review of IDEA cases is less deferential to the agency decision than judicial review of agency actions in other contexts. Id. While courts should not substitute their own judgment for that of the administrative agency, how much deference is due the agency decision is a matter of discretion. Id. at 1472-1473; See also *Bd. Of*

---

[3] A series of e-mail correspondence was never produced in response to a request for K.M.'s records before the due process hearing.  (Facts 113-118). K.M. requests that the court consider these e-mail as additional evidence under 20 U.S.C. §1415(i)(2)(C)(ii). (Fact 105-112).

*Education of the Hendrick Hudson Central Sch. Dist. v. Rowley* 458 U.S. 176 (1982).

Courts give the hearing officer's findings more deference when they are "thorough and careful." *Capistrano Unified Sch. Dist. V. Wartenberg* 59 F. 3d 884, 891 (9th Cir. 1995). Courts are not permitted simply to ignore the administrative findings. *Ojai*, 4 F.3d at 1472. Questions of law and mixed questions of law and fact, however, are reviewed de novo. *N.B. v. Hellgate Elementary Sch. Dist.*, 541 F.3d 1202, 1207 (9th Cir. 2008).

## B. Summary Special Education Law

The Individuals with Disabilities Education Act (IDEA) ensures that all disabled children receive a free and appropriate public education (FAPE) through individualized education programs (IEPs). See 20 U.S.C. §1400(c); 20 U.S.C. §1415(a); *W.G. v. Bd. Of Trustees of Target Range Sch. Dist.*, (9th Cir. 1992) 960 F. 2d 1479.   An IEP is a written statement for each child with a disability that is developed, reviewed, and revised in accordance with 20 U.S.C. 1414(d).  The IEP must be designed to meet each child's unique needs. 20 U.S.C. §1401(14).  The IEP, which is prepared at a meeting between qualified representatives of the school, the child's teacher, the child's parents or guardian, and where appropriate, the child, consists of a written document containing (1) a statement of the child's present levels of performance; (2) a statement of annual goals and short term objectives; (3) a statement of the services to be provided to the child; (4) the projected date for the initiation and duration of services; and (5) a statement describing how the child's progress will be evaluated.  *Bd. Of Educ. Of Hendrick Hudson Central Sch. Dist. V. Rowley* (1982) 458 U.S. 176, 182.

*Rowley* defines FAPE as:

> Personalized instruction with sufficient support services to permit the child

to benefit educationally from that instruction. Such instruction and services must be provided at public expense, must meet the State's educational standards, must approximate the grade levels used in the State's regular education, and must comport with the child's IEP. *Id*. at 203. [Emphasis Added].

*Rowley* affirms a definition of FAPE that includes compliance with state standards and not just a definition of "educational benefit" as a "basic floor of opportunity". *Id*. Provision of FAPE is not limited to only whether or not student received educational benefit. Passing grades alone are not FAPE and do not establish that the district has met its obligation to craft an educational program designed to meet K.M.'s unique needs. See *Gregory K. v. Longview School District* (9th Cir. 1987) 811 F.2d 1307 and 34 CFR 101(c)(1).

### C. Communication Access Is a State Standard and Necessary Element To Provide Deaf Students FAPE

In formulating K.M.'s IEP Tustin had to consider services that provide her with an equal opportunity for communication access consistent with Education Code §56000.5 and 20 U.S.C 1414(d)(3)(B)(iv). Education Code §56345(d). Services necessary to ensure communication accessible academic instruction must also be consistent with the ADA and Section 504. Education Code §56345(d)(4). Education Code §56000.5 states that it is essential that deaf children have "direct and appropriate access to all components of the educational process" (Education Code §56000.5(b)(7)), be able to "communicate directly" with their peers (Education Code §56000.5(b)(4)), and that their "unique communication mode be respected, utilized and developed" (Education Code §56000.5(b)(2)).   Under the ADA, Tustin was required to give primary consideration to

18

K.M.'s request for CART. See 28 CFR §35.160.

1. Consider And Discuss Must Be Meaningful And Requires More Than Merely Just Talking About Communication Access At The IEP

The ALJ incorrectly decided that Tustin met its obligation to "consider" by merely discussing and talking about K.M.'s communication needs.  This is a disregard for the requirements that IEP meetings be meaningful.  Districts must keep an open mind, or the detailed procedural requirements to formulate an IEP would be nothing more than a checklist of procedural hoops to jump through.

 i. IDEA's procedural requirement must be rigorously enforced and strictly reviewed for compliance

The first step in reviewing a special education administrative decision is determining whether or not the rigorous procedural requirements necessary to formulate an IEP have been met.  See *Board of Education of the Hendrick Hudson Central School District v. Rowley* (1982) 458 U.S. 176, 206-207. Compliance with IDEA's procedures when formulating an IEP are not merely technical requirements and should be rigorously enforced. *Union School District v. Smith* (9th Cir. 1994) 15 F.3d 1519.

IDEA's procedural guarantees are not mere procedural hoops through which Congress wanted state and local educational agencies to jump. Rather, the formality of the Acts' procedures is itself a safeguard against arbitrary or erroneous decision making. *Daniel R.R. V. State Board of Education* 874  F. 2d 1036 (5th Cir. 1989) quoting *Jackson v. School Board* 806 F. 2d 623, 630. (5th Cir. 1986). When a school district fails to develop an IEP in the manner specified in the statues "the purposes of the Act are not served and the district may have failed to provide a FAPE." *W.G. v. Board of Trustees of Target Range School District No 23, Missoula, Montana* (9th Cir. 1992) 960 F. 2d 1479,

19

Memorandum of Points and Authorities in Support of Motion for Summary Judgment by K.M.

1485. Indeed, procedural compliance by the school districts should be strictly reviewed.

*Dong ex rel. Dong v. Board of Education of the Rochester Community School* (6th Cir. 1999) 197 F.3d 793, 800.

**ii. Procedural compliance must be meaningful**

Parents play a significant role in the IEP process. *Schaffer v. Weast* (2005) 546 U.S. 49, 53. As the United State Supreme Court pointed out:

Without question a parent of a child with a disability has a particular and personal interest in fulfilling "our national policy of ensuring equality of opportunity, full participation, independent living, and economic self-sufficiency for individuals with disabilities." §1400(c)(1).

*Winkelman v. Parma City School District* (2007) 550 U.S. ___, 11.

Accordingly, under IDEA, parents must be allowed meaningful input into the development of the IEP, *W.G.*, 960 F.2d at 1483-1484. Likewise, a "take it or leave it" approach by a district or its refusal to discuss alternatives may result in a denial of FAPE. Id. at 1484.  The district must show that it is willing to listen to the parents and that they have an open mind. *Ms. C ex rel. NL v Knox County Schools* (6th Cir. 2003) 215 F.3d 688, 694-695.  Likewise, when a district rejects alternatives presented by the parents regardless of any evidence concerning student's individual needs and effectiveness of the program it may also result in a procedural violation.  *Deal v. Hamilton County Board of Education* (6th Cir. 2005) 392 F.3d 840. 857.

The procedural formalities required Tustin to engage in a meaningful discussion with K.M.'s parents regarding her education and the necessary components of her IEP and not merely talk about what she needed.

**iii. Tustin had to do more than just discuss services necessary to provide K.M. with an equal opportunity for communication access for there to be meaningful procedural compliance**

The special factors for deaf students that an IEP team must consider includes services necessary to provide an opportunity for equal communication access. When considering opportunities for equal communication access it is not enough to meet the procedural requirement if Tustin merely discusses the matter, but takes no meaningful action to actually provide the services.

In gauging Tustin's responsibility to "consider" providing K.M. with an equal opportunity for communication access, it is appropriate to look at the statutory scheme as a whole. *Winkelman* at 5. The California legislature went out of its way to articulate that it is essential that deaf children have "direct and appropriate access to all components of the educational process" (Education Code §56000.5(b)(7)), be able to "communicate directly" with their peers (Education Code §56000.5(b)(4)), and that their "unique communication mode is respected, utilized and developed" (Education Code §56000.5(b)(2)). The legislature required that IEP teams, consistent with these mandates, consider services necessary to provide deaf children with an opportunity for equal communication access. The statute goes on to require that such consideration be consistent with ADA and Section 504 standards.

Given this statutory backdrop and the unique nature of hearing loss as a low incidence disability, it is inconceivable that merely talking about these items satisfies Tustin's requirement to "consider." Likewise, given how much emphasis is placed on procedural requirements to ensure meaningful participation they are not merely hoops to jump; Tustin had to "consider" with the purpose of providing actual services to give K.M. an opportunity for equal communication access. "Consider" must mean more than to

21

merely discuss or talk about because of the emphasis the legislature placed on how critical it is to provide access to children with hearing loss.

Consideration in an effort to provide services necessary to give K.M. an equal opportunity for communication access is consistent with California public policy that education be made available to all on an equal basis. *Butt v. state of California* (1992) 4 Cal. 4th 668, citing *Jackson v. Pasadena City School District* (1963) 59 Cal. 2d 876, 880.

Tustin disregarded parents, teachers, experts, K.M. and instead relied upon its own staff who were not knowledgeable about CART.  Rothwell-Vivian an audiologist that had been paid by Tustin to work with K.M. since she was about a year old said that K.M. needed CART.  No one from Tustin even asked Rothwell-Vivian anything about her recommendation for CART.  Two of K.M.'s teachers from the eighth grade said that K.M. would struggle to hear classroom discussion in high school. No one from Tustin asked them anything else about K.M.'s needs in high school.

K.M. said that she did not like the FM system, that she had trouble hearing classroom discussion and that she was "reticent" to speak in class because she was not always sure of what was said and did not want to look foolish.  No one from Tustin asked K.M. anything about her statements.

K.M.'s high school teachers said that the pass around microphone and the FM system would not be beneficial because class discussion moved too fast.  No one from Tustin asked them anything else about providing K.M. with access to what is said in class.

K.M. said that she finds it difficult to hear in a portable classroom that was assigned for her Ancient Civilizations classroom.  No one from Tustin asked K.M. anything more about this problem.

No one from Tustin ever discussed what could be done to give K.M. the opportunity to hear what other students were saying in class. Instead, Tustin decided that her grades were good enough and therefore no further discussion to provide meaningful access was necessary.

2. Provision of CART Is Consistent With Rowley And Meets K.M.'s Unique Needs

The ALJ's Decision says that CART is not necessary because K.M. derives benefit from her education. This ignores that the *Rowley* standard includes compliance with the state standards found in Education Code §56000.5, 56341.1 (b)(4), and 56345(d)(1)-(4) and that "special education" requires meeting the unique needs of the student. 20 U.S.C §1401(29). These standards do not heighten the level of education that needs to be provided to a student with hearing loss, or require that their education be maximized.  These standards recognize that communication access is a unique need for deaf children at school regardless of their grades.

**i. Compliance with California state standards for educating deaf students is part of the Rowley FAPE analysis**

The direct and equal access mandated for deaf children in California are state standards that have been enforced by OAH. Such standards that are not inconsistent with IDEA are enforceable in federal court. *N.B. v. Hellgate Elementary Sch. Dist.*, 541 F.3d 1202, 1207 (9th Cir. 2008).

These state standards for deaf children specified under California law were not considered by the Supreme Court's FAPE analysis in Rowley. Likewise, changes to IDEA since Rowley, include an obligation to consider the communication needs of the student regardless of grades or other progress made at school. 20 U.S.C.

Memorandum of Points and Authorities in Support of Motion for Summary Judgment by K.M.

§1414(d)(3)(B)(iv) and Education Code §56341.1 (b)(4).  The school district must also consider whether the student requires assistive technology. 20 U.S.C §1414 (d)(3)(B)(v) and Education Code §56341.1.

**ii. CART is an appropriate service that facilitates communication access for deaf students**

Prior OAH decisions make clear that CART is an appropriate service that facilitates communication access for deaf students.  In *Student v. Glendora Unified School District*, OAH Case #N2006110090 (Exhibit "A" to Appendix of OAH Special Education Decisions), the district was ordered to provide CART for an oral deaf student. The decision notes that CART was necessary to support student's unique communication needs even though she was receiving adequate grades. In that case, OAH specifically applied Education Code Sections 56000.5 and 56341.1, noting that the IEP team must consider the student's communication needs, linguistic needs, social, emotional needs and the opportunities for peer interaction and communication. Id at 17.

Likewise, in *Student v. Glendora Unified School District*, OAH Case #2007080893 (Exhibit "B" to Appendix of OAH Special Education Decisions), OAH ordered CART for an oral deaf student that was receiving good grades because it would help with communication access as required by Education Code Sections 56000.5 and 56341.1. In so ruling, the OAH decision noted that "unique educational needs" includes social, emotional and communicative needs. Id at 7.  Finally, in that case, it was noted at page 10 that:

> Student has not been provided with access to the general curriculum.
> Instead, he has been provided with the opportunity to sit in general
> education classes and hear a portion of the class as presented by the

teachers.  He misses out on substantial portions of the curriculum including the dialogue and participation aspects because of his hearing disability. In both of these cases, students' use of an FM system and ability to hear some, but not all, of the words spoken in class justified provision of CART.

The U.S. District Court, Southern District of California recently found that California law pertaining to equal communication access for hearing impaired students is a state standard that is incorporated into the IDEA FAPE analysis. See *D.H. v. Poway Unified School District* 09 cv 2621-L(LNS). (Order Denying Plaintiff's Motion for Summary Judgment issued 3/14/11, page 5). This case involved a district's belief that no transcription of any type was necessary for a middle school student. The Order in D.H., however, denied student summary judgment saying that merely talking about the special factors for deaf students was enough. The Order in D.H did not address whether or not the district's obligation to "consider" and "discuss" had to be meaningful. D.H. contrasts with another Poway case where OAH specifically found that provision of CART was compelled by the state standards for deaf children.  *Student v. Poway Unified School District*, OAH Case # 2009070998 (Exhibit "C" to Appendix of OAH Special Education Decisions).


## D. The Evidence Established The Need For Cart At the IEP Meetings Contrary to The ALJ's Conclusion

The ALJ also failed to properly address critical evidence.  For example, verbatim CART transcripts from English and Ancient Civilization show that contrary to teacher testimony there was no repeating of what students in class said. (Fact 36). The ALJ also failed to address how the FM system would provide communication access to class

25

discussion when Tustin's own teacher's say that a pass around microphone will not work because of the fast pace of the discussions. The ALJ incorrectly states that Tustin offered to provide TypeWell, but does not address that the offer was only on a trial basis, or that the meaning-for-meaning transcription was not something that K.M. found useful. Finally and most importantly, the ALJ does not address how Tustin considered K.M.'s right to an opportunity for equal communication access when she sat in class reticent to speak because she was not sure what her classmates said, or why Tustin never asked Karen Rothwell Vivian to explain her recommendation for CART, or how Tustin address statements by two of K.M.'s teachers, Ms. Miranda and Mr. Shaffer, that they believed K.M. would have trouble following discussion in high school. (Fact 44 & 47).

It is the ALJ's failure to address these facts that renders his Decision defective especially in light of the legislative mandate to provide deaf children with communication access through the IEP process.

There was uncontroverted evidence that CART would give K.M. the access that she needed.  With CART, K.M. would be able to follow class discussion and not feel reticent to speak up in class.  CART would allow K.M. to easily take her own notes and give her access to vocabulary, incidental learning and help her to understand idiomatic expressions.

## IV. CONCLUSION

Tustin has not taken steps to make sure that communications in the classroom with K.M. are as effective as with the non-hearing impaired.  Likewise, Tustin has not provided K.M. with adequate access to the spoken word as her non-handicapped classmates.  K.M.'s non-disabled peers do not have to sit in class reticent to speak up

26

because they are not sure of what someone said.

The ADA, Unruh, Section 504 and IDEA all require that deaf children have the opportunity for equal communication access.  K.M. is entitled to that access and Tustin should be ordered to provide her with CART.

Dated:  April 4, 2011                                    GREY & GREY


                                                         By:  /s/ David M. Grey
                                                         David M. Grey Attorney for Plaintiff

Memorandum of Points and Authorities in Support of Motion for Summary Judgment by K.M.

1

2

3

4

## Proof of Service

5

6

7       I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to this action; my business address is 233 Wilshire Blvd., Suite 700, Santa Monica, California.

8

9       On April 4, 2011, I served the forgoing document:

10      *Memorandum of Points and Authorities in Support of Motion for Summary Judgment by K.M.*

11

12      on each interested party in this action by electronic mail through CM/ECF filing and the party listed below is currently on the list to receive e-mal for this case.

13

| Jennifer C. Brown, Esq.<br>Best, Best & Krieger<br>5 Park Plaza, Suite 1500<br>Irvine, CA 92814<br><br>Jennifer.Brown@bbklaw.com | Cary K. Quan, Esq.<br>17011 Beach Blvd., Ste 400<br>Huntington Beach, CA 92647<br><br>cquan@dbtlaw.com |
|---|---|

14

15

16

17

18

19      I declare under penalty of perjury under the laws of the State of California that the forgoing is true and correct and that I am a member of the bar of this court.

20      Executed on April 4, 2011, at Santa Monica, California.

21

22

23

24              /s/David M. Grey
                Attorney for Plaintiff
25              david@greyslaw.com

26

27

28

Memorandum of Points and Authorities in Support of Motion for Summary Judgment by K.M.