JENNIFER C. BROWN, Bar No. 230181
jennifer.brown@bbklaw.com
DANIEL S. ROBERTS, Bar No. 205535
daniel.roberts@bbklaw.com
MEGAN M. MOORE, Bar No. 260178
megan.moore@bbklaw.com
BEST BEST & KRIEGER LLP
5 Park Plaza
Suite 1500
Irvine, CA 92614
Telephone: (949) 263-2600
Facsimile: (949) 260-0972

Attorneys for Defendant
TUSTIN UNIFIED SCHOOL DISTRICT

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| K.M., a minor, by and through her Guardian Ad Litem, LYNN BRIGHT,<br><br>             Plaintiff,<br><br>     v.<br><br>TUSTIN UNIFIED SCHOOL DISTRICT,<br><br>             Defendant. | Case No.  SACV 10-01011 DOC (MLGx)<br><br>The Honorable David O. Carter,<br>United States District Court Judge<br><br>**DEFENDANT TUSTIN UNIFIED SCHOOL DISTRICT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEREOF**<br><br>[Filed concurrently herewith:<br><br>(1)  [Proposed] Statement of Uncontroverted Facts and Law;<br>(2)  Request for Judicial Notice;<br>(3)  Declaration of Leticia Barrozo;<br>(4)  Declaration of Jennifer Brown;<br>(5)  Declaration of Nick Friendt;<br>(6)  Declaration of Kristen Hammer;<br>(7)  Declaration of Misty Jones;<br>(8)  Declaration of Erin Mead;<br>(9)  Declaration of Raquel Rasmussen;<br>(10)  Declaration of Erin Thomas;<br>(11)  Declaration of Maria Torres;<br>(12)  [Proposed] Judgment]<br><br>Date:   May 2, 2011<br>Time:  8:30 a.m.<br>Ctrm:  9D |

## NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

**PLEASE TAKE NOTICE** that on May 2, 2011 at 8:30 a.m., or as soon thereafter as the matter may be heard in Courtroom 9D of the United States District Court, located at 411 West Fourth Street, Santa Ana, CA 92701, Defendant Tustin Unified School District ("District") will, and hereby does, move for summary judgment, pursuant to Federal Rule of Civil Procedure 56, on the ground that there is no genuine issue of material fact and the District is entitled to judgment as a matter of law.

The Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Administrative Record, the concurrently-lodged [Proposed] Statement of Uncontroverted Facts and Conclusions of Law, the District's Request for Judicial Notice, the Declarations of Jennifer Brown, Leticia Barrozo, Nick Friendt, Kristen Hammer, Misty Jones, Erin Mead, Raquel Rasmussen, Erin Thomas, Maria Torres, the file and record in this case, and any further argument or evidence the Court deems fit to receive at the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on an on-going basis throughout this litigation, including most recently on March 17, 2011.

Dated:    April 4, 2011                          BEST BEST & KRIEGER LLP


By: **/s/ Jennifer C. Brown**
　　　Jennifer C. Brown
　　　Daniel S. Roberts
　　　Megan M. Moore
　　　Attorneys for Defendant,
　　　TUSTIN UNIFIED SCHOOL
　　　DISTRICT

# TABLE OF CONTENTS

Page No.

I.    INTRODUCTION ...........................................................................1

II.   STATEMENT OF BACKGROUND FACTS...................................2

III.  STANDARD OF REVIEW...............................................................5

    A.    An Administrative Hearing Decision Is To Be Reviewed by the Court According To A Modified De Novo Review Standard...............5

    B.    Motion for Summary Judgment Standard .........................................6

IV.   PLAINTIFF'S IDEA CLAIM FAILS AS A MATTER OF LAW AND THE ADMINISTRATIVE HEARING DECISION SHOULD BE AFFIRMED ....................................................................................6

    A.    FAPE Standard Under the IDEA.......................................................6

    B.    THE ALJ's DECISION PROPERLY CONCLUDED THAT THE DISTRICT COMPLIED WITH ITS OBLIGATIONS UNDER THE IDEA ...............................................................................8

        1.    THE ALJ'S DECISION WAS THOROUGH AND CAREFUL AND IS THEREFORE ENTITLED TO SUBSTANTIAL DEFERENCE ..................................................9

        2.    THE ALJ'S FINDINGS WERE SUPPORTED BY A PREPONDERANCE OF THE EVIDENCE, IF NOT SUBSTANTIAL EVIDENCE ..............................................11

V.    PLAINTIFF'S CLAIMS UNDER THE ADA AND SECTION 504 FAIL AS A MATTER OF LAW...................................................... 16

    A.    Plaintiff's Section 504 and ADA Claims Are Derivative of Plaintiff's Failed IDEA Claim........................................................ 17

    B.    Even if Plaintiff's Failure to Establish Her IDEA Claim is Not Determinative of the Section 504 and ADA Claims, Plaintiff Is Not Otherwise Able To Establish that She Has Been Denied Meaningful Access to Her Education.................................................. 19

    C.    Plaintiff Cannot Prove a Basis for an Award of Damages Because Plaintiff Cannot Establish the District Acted With Deliberate Indifference Towards K.M. ............................................ 22

VI.   PLAINTIFF'S CLAIMS UNDER THE UNRUH CIVIL RIGHTS ACT FAIL AS A MATTER OF LAW AND SHOULD BE DISMISSED ................................................................................ 23

    A.    Plaintiff's Third Cause of Action Fails to State a Claim Upon Which Relief Can Be Granted......................................................... 23

    B.    Alternatively, Plaintiff Is Barred From Seeking Damages From the District Pursuant to the Unruh Act for Failing to Substantively Comply with the Government Claims Act.................. 24

VII.  CONCLUSION.............................................................................. 25

1
2

# TABLE OF AUTHORITIES

3    **Page(s)**

**CASES**

4
5    Adams v. Oregon,
       195 F.3d 1141 (9th Cir. 1999) ..........................................................8

6
7    Alex G. v. Board of Trustees of Davis Joint Unified School District,
       387 F.Supp. 2d 1119 (E.D. Cal. 2005) ...................................... 18, 22

8
9    Alexander v. Choate,
       469 U.S. 287 (1985).................................................................... 19

10
11   Amanda J. v. Clark County Sch. Dist.,
       267 F.3d 877 (9th Cir. 2001) ........................................................9

12
13   Anderson v. Liberty Lobby, Inc.,
       477 U.S. 242 (1986)......................................................................6

14   Bd. of Educ. v. Rowley
       ("Rowley"), 458 U.S. 176 (1982) ............................................ 5, 7, 8

15
16   Bird v. Lewis & Clark College,
       303 F.3d 1015 (9th Cir. 2002) ................................................ 19, 20

17
18   Butler v. L.A. County,
       617 F. Supp. 2d 994 (C.D. Cal. 2009) ............................................ 24

19
20   Capistrano Unified Sch. Dist. v. Wartenberg, et al.,
       59 F.3d 884 (9th Cir. 1995) ..........................................................5

21
22   Cave v. E. Meadow Union Free Sch. Dist.,
       480 F. Supp. 2d 610 (E.D.N.Y. 2007) .................................. 19, 20, 21

23
24   Celotex Corp. v. Catrett,
       477 U.S. 317 (1986)......................................................................6

25
26   D.F. v. Western Sch. Corp.,
       921 F.Supp. 559 (S.D. Ind. 1996).................................................. 17

27   D.K. v. Solano County Office of Educ.,
       667 F. Supp. 2d 1184 (E.D. Cal. 2009) ........................................... 24

28

Doe v. Arlington County Sch. Bd.,
    41 F.Supp.2d 599 (E.D. Va. 1999) ................................................... 17

Duvall v. County of Kitsap,
    260 F.3d 1124 (9th Cir. 2001) ......................................................... 22

Estate of Martin v. Cal. VA,
    560 F.3d 1042 (9th Cir. 2009) ......................................................... 16

Gregory K. v. Longview Sch. Dist.,
    811 F.2d 1307 (9th Cir. 1987) ....................................................... 5, 7

J.G. v. Douglas County School Dist.,
    552 F.3d 786 (9th Cir. 2008) ............................................................ 5

J.L. v. Mercer Island School District,
    575 F.3d 1025 (9th Cir. 2009) .......................................................... 8

J.W. v. Fresno Unified School Dist.,
    626 F.3d 431 (9th Cir. 2010) ............................................................ 6

Konig v. State Bar of Cal.,
    2004 U.S. Dist. LEXIS 19498 (N.D. Cal. 2004) .............................. 23

Mark H. v. Lemahieu,
    513 F.3d 922 (9th Cir. 2008) ...................................................... 21, 22

Ms. S. ex rel. G v. Vashon Island Sch. Dist.,
    337 F.3d 1115 (9th Cir. 2003) .......................................................... 9

N.L. v. Knox County Schs.,
    315 F.3d 688 (6th Cir. 2003) .......................................................... 17

Ojai Unified Sch. Dist. v. Jackson,
    4 F.3d 1467 (9th Cir. 1993) ........................................................... 11

Ortega v. O'Connor,
    764 F.2d 703 (9th Cir. 1985) .......................................................... 23

Park v. Anaheim Union High Sch. Dist.,
    464 F.3d 1025 (9th Cir. 2006) ........................................................ 11

R.B. v. Napa Valley Unified School District,
    496 F. 3d. 932 (9th Cir. 2007) .......................................................... 5

Scanlon by Birkner v. San Francisco Unified Sch. Dist.,
    1994 U.S. Dist. LEXIS 4817 (N.D. Cal. 1994) ................................. 17

Seattle Sch. Dist. No. 1 v. B.S.,
    82 F.3d 1493 (9th Cir. 1996) ........................................................ 5, 11

Wiles and Bond v. Department of Education, State of Hawaii,
    593 F.Supp. 2d 1776 (D. Haw. 2008) ......................................... 19, 20

Zukle v. Regents of University of California,
    166 F.3d 1041 (9th Cir. 1999) ........................................................ 16

**STATUTES**

20 U.S.C. §§ 1400 ...................................................................................6

20 U.S.C. § 1401(9) ...............................................................................6

20 U.S.C. § 1401(26)(A) ........................................................................7

20 U.S.C. § 1401(29) ..............................................................................7

20 U.S.C. § 1414 ....................................................................................8

20 U.S.C. § 1414(d)(3)(B)(iv) ...........................................................10, 13

20 U.S.C. § 1415 ....................................................................................8

20 U.S.C. § 1415(i)(2)(C) .......................................................................6

20 U.S.C. § 1415(c) ...............................................................................4

29 U.S.C. § 794(a) ................................................................................16

42 U.S.C. 12132 ...................................................................................16

42 U.S.C. § 12132 ................................................................................16

Cal. Civ. Code § 51 ...............................................................................24

Cal. Ed. Code §§ 56000.5 .....................................................................10

Cal. Ed. Code § 56000.5(e) ...................................................................11

Cal. Ed. Code §56000.5(b)(7) ................................................................11

Cal. Ed. Code §§ 56000 .................................................................. 6

Cal. Ed. Code § 56000.5 ............................................................... 10

Cal. Ed. Code § 56031(a) ................................................................ 7

Cal. Ed.Code § 56345 ................................................................... 10

Cal. Ed. Code § 56345(d) .......................................................... 13, 14

Cal. Ed. Code § 56345(d)(1)-(4) ................................................... 10

Cal. Ed. Code, § 56381 ................................................................... 4

Cal. Gov. Code § 911.2 ................................................................. 24

Cal. Gov. Code § 911.4(b) ............................................................ 25

Cal. Gov. Code § 945 .................................................................... 23

Cal. Gov. Code § 945.4 ............................................................ 23, 25

Cal. Gov. Code § 946.6(a) ............................................................ 25

**OTHER AUTHORITIES**

28 C.F.R. § 35.130(b)(7) ............................................................... 19

34 C.F.R. § 300.320 ....................................................................... 8

34 C.F.R. §§ 300.324-328 ............................................................... 8

Fed. R. Civ. P. 56(a) ...................................................................... 6

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   **INTRODUCTION.**

This action is first and foremost an appeal of an administrative hearing in which it was determined by an administrative law judge that the Defendant Tustin Unified School District ("District") prevailed on all issues heard and decided. Specifically, on July 31, 2010, Plaintiff K.M., a minor by and through her Guardian ad Litem, Lynn Bright ("Plaintiff"), filed a request for an administrative due process hearing ("DPH") before the Office of Administrative Hearings ("OAH") on behalf of K.M., a tenth grade student with a hearing impairment.  Plaintiff alleged, in pertinent part, that the District denied K.M. a free appropriate public education ("FAPE"), in violation of the Individuals with Disabilities in Education Act, 20 U.S.C. § 1400 ("IDEA"), by failing to provide K.M. with Computer Assisted Real Time Captioning ("CART") services in each of her high school classes.

The DPH was conducted over a period of seven days before OAH in April 2010.  On June 1, 2010, Administrative Law Judge Timothy Newlove ("ALJ") issued a decision finding that the District provided K.M. with a FAPE without the provision of any CART services.  AR001923, ¶49.[1]  The ALJ further held that the District made a good faith effort to assess K.M.'s need for CART services in the high school setting; however, K.M.'s mother did not fully cooperate with these efforts.  AR001915, ¶¶17-18.  Finally, the ALJ held that the Individualized Education Program ("IEP") teams appropriately considered the request for CART services.  AR001918-001920, ¶¶31-36.

On July 10, 2010, Plaintiff appealed the ALJ's Decision to this Court and is seeking to overturn the Decision based on alleged factual and legal errors.  Plaintiff is also seeking a finding that the District violated the Americans with Disabilities

---

[1] AR refers to the Administrative Record maintained by OAH in the administrative action in OAH Case No. 2009080029, which is being appealed by Plaintiff herein.

1   Act ("ADA"), Section 504 of the Rehabilitation Act of 1973 ("Section 504"), and

2   the Unruh Civil Rights Act ("Unruh Act") based on the same inherently flawed

3   claims Plaintiff asserted before OAH.  Namely, Plaintiff is asserting that K.M. is

4   entitled to access, via a court reporter-style captionist and a computer screen (i.e.

5   CART), to every spoken word in each of K.M.'s classes, without regard for whether

6   this access is necessary in order to provide K.M. with a FAPE or "meaningful

7   access" to her educational program.  On the other hand, the District's position is

8   that K.M. has, at all times at issue in this dispute, received a FAPE and "meaningful

9   access" to her education.  As such, K.M. does not require, nor is the District

10  obligated to provide, any additional services to K.M., including CART.

11         The ALJ's Decision should be upheld because it thoroughly and carefully

12  analyzed the relevant factual and legal issues presented during the DPH, and

13  properly concluded that K.M. does not require CART services in order to benefit

14  from her educational program.  See AR001920-001923.  Further, the law has

15  established that when discrimination claims are asserted in the context of special

16  education, a violation of the IDEA is a necessary prerequisite for establishing a

17  claim of discrimination.  Therefore, Plaintiff cannot prevail in her ADA, Section

18  504 or Unruh Act claims as a matter of law if the Decision is upheld.  Moreover,

19  Plaintiff cannot prove all of the requisite elements of her claims under Section 504,

20  the ADA, or the Unruh Act.  Thus, the District is entitled to summary judgment.

21  **II.    STATEMENT OF BACKGROUND FACTS.**

22         At the time of the DPH until very recently, K.M. had a cochlear implant in

23  her right ear and a hearing aid in her left ear.  AR002011.  K.M.'s primary mode of

24  communication is spoken English, and K.M. is an auditory/oral learner.

25  AR000811, ll. 1-4; AR000986-000988.  During the DPH, the District's educational

26  audiologist, Dr. Maria Abramson, testified that K.M. has "excellent auditory

27  access" and is aware of all sounds in the frequency range within the normal range

28  of hearing (i.e. 0 to 25 decibels).  AR000974-000975.  K.M.'s hearing loss in her

right ear, with her cochlear implant, is considered in the minimal to mild range, and K.M.'s hearing loss in her left ear, aided, is in the mild to moderate or profound range. AR000426, AR000974-000976, AR001991, AR002362. K.M. is also an excellent lip reader, which she uses to supplement her hearing. See AR001550, ll. 10-17.[2]

K.M. has been fully included in general education classes since kindergarten. AR001987, AR002012, AR002017. During the 2008/2009 school year, K.M. was promoted to honors classes in English and Social Sciences, and has remained an honors student in those two subjects through this date. AR00197-000198, AR001093; Declaration of Nick Friendt, ¶6; Declaration of Erin Thomas, ¶6.)

The District has funded weekly auditory-verbal therapy ("AVT") services for K.M. since kindergarten. AR002012, AR002017. The purpose of AVT services is to train and assist K.M. to make sense of the auditory signal, and learn to listen and speak. AR000065, ll. 1-4; AR000863, ll. 8-24; AR000870874. K.M. has been very successful with her AVT services. AR002012-2016.

The District has consistently offered or provided K.M. access to FM technology in the classroom. AR001989, AR002070, AR002174, AR002185, AR002209. An FM system amplifies the voice of the speaker with the microphone, or a audio signal from a television. AR000690, ll. 10-18. With an FM System, the auditory signal can be transmitted to K.M. through a sound field system (i.e. speaker(s) in the classroom), or a personal FM system (which connects directly to K.M.'s cochlear implant). AR001388.

Prior to K.M.'s transition to high school, the District conducted a comprehensive triennial assessment was conducted ("Triennial Assessment").

---

[2] K.M. underwent surgery approximately one month ago to implant a second cochlear implant in her left ear. Declaration of Jennifer Brown ("Brown Decl."), ¶3, Ex. "A" attached thereto, p. 44.) It is reasonable to anticipate that K.M.'s auditory access is going to significantly improve in the coming weeks or months. See AR000875-000876.

1   AR002010-002029.[3]  According to the results of the Triennial Assessment, K.M.

2   did not have any academic, cognitive, working memory or language deficits, but

3   rather has average to above-average skills in each of these areas.  Id.; AR000633-

4   000637; AR000719-000722.  K.M.'s lack of deficits in each of these areas,

5   including her auditory memory skills, assist her ability to hear and interpret what

6   she hears in the classroom.  AR000819.

7        K.M. has also been provided numerous classroom accommodations in middle

8   and high school, including preferential seating, providing homework assignments

9   visually, providing a clear view of the teacher and instructional resources, repeating

10  and paraphrasing student comments, closed captioning for videos, providing a copy

11  of power point notes, and minimizing background noise.  SUF, ¶¶23-24.[4]

12       In order to further support K.M. in the high school setting, the June 2009 IEP

13  team offered K.M. consultation services from the District's deaf/hard of hearing

14  ("DHH") specialist.  AR002046.  Parent declined these services for the 2009/2010

15  school year.  AR002058-002059.  In January 2011, educational audiology

16  consultation services were initiated.  Declaration of Raquel Rasmussen, ¶¶8-10.

17       K.M. has consistently demonstrated average to above-average academic

18  performance and classroom participation in each of her classes, including her

19  foreign language and Honors classes.  SUF, ¶¶25-26.  K.M. has reported to

20  numerous District staff members during the last three years that she hears and

21  understands what goes on in her classes.  SUF, ¶¶27-28, 30-31.  K.M. has

22  successfully competed on the Basketball and Track team, enjoys attending high

23  school dances and generally functions as a typical student, who is fully integrated

24  _____

25  [3] A triennial assessment is an assessment the school district is required to conduct
    every three years to determine if an individual with a disability continues to be
26  eligible for special education.  20 U.S.C. § 1415(c); Cal. Ed. Code, § 56381.

27  [4] SUF refers to the [Proposed] Statement of Uncontroverted Facts and Conclusions
    of Law filed concurrently herewith, including the supporting evidence identified in
28  support of the cited paragraph therein.

1    into the mainstream of the high school experience. Decl. Brown, ¶3, Ex. "A"

2    attached thereto, pp. 4-45.

3    ### III.   STANDARD OF REVIEW.

4    ### A.   An Administrative Hearing Decision Is To Be Reviewed by the Court According To A Modified De Novo Review Standard.

6    The standard of review of an administrative hearing decision is a modified <u>de

7    novo</u> review standard, based primarily on a review of the stipulated administrative

8    record. <u>Seattle Sch. Dist. No. 1 v. B.S.</u>, 82 F.3d 1493, 1499 (9th Cir. 1996).  In

9    reviewing the decision of the ALJ, the Court must give "due weight" to the

10   underlying administrative proceedings. <u>Bd. of Educ. v. Rowley</u> ("Rowley"), 458

11   U.S. 176, 206 (1982).  Exactly how much weight is "due" to an administrative law

12   judge's findings is a matter of discretion of the courts. <u>Gregory K. v. Longview

13   Sch. Dist.</u>, 811 F.2d 1307, 1311 (9th Cir. 1987); <u>see also Capistrano Unified Sch.

14   Dist. v. Wartenberg, et al.</u>, 59 F.3d 884, 891 (9th Cir. 1995).  However, the Court

15   should give "substantial weight to the hearing officer's decision if the court finds

16   that the findings are "thorough and careful." <u>J.G. v. Douglas County School Dist.</u>,

17   552 F.3d 786, 792 (9th Cir. 2008).  A decision is thorough and careful when the

18   hearing officer "participates in the questioning of witnesses and writes a decision

19   'contain[ing] a complete factual background as well as a discrete analysis

20   supporting the ultimate conclusions.'" <u>R.B. v. Napa Valley Unified School

21   District</u>, 496 F. 3d. 932, 943 (9th Cir. 2007), (citing <u>Park v. Anaheim Union High

22   Sch. Dist.</u>, 464 F.3d 1025, 1031 (9th Cir. 2006)).

23   The IDEA further provides that in an action challenging an administrative

24   decision, "the court shall receive the records of the administrative hearing, shall

25   hear additional evidence at the request of the party, and basing its decision on the

26   preponderance of the evidence, shall grant such relief as the court determines is

27

28

1   appropriate." 20 U.S.C. § 1415(i)(2)(C).[5] As the party seeking relief in federal

2   court, Plaintiff bears the burden of demonstrating that the ALJ's decision should be

3   reversed. <u>J.W. v. Fresno Unified School Dist.</u>, 626 F.3d 431, 428 (9th Cir. 2010).

4         **B.**    **Motion for Summary Judgment Standard.**

5       A Motion for Summary Judgment shall be granted when there is no genuine

6   dispute as to any material fact and the moving party is entitled to judgment as a

7   matter of law. <u>See</u> Fed. R. Civ. P. 56(a); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.

8   242, 247-48 (1986). It is the moving party's burden to show that "under the

9   governing law, there can be but one reasonable conclusion as to the verdict."

10  <u>Anderson</u>, 477 U.S. at 250.

11      In addition, where the non-moving party has the burden of proof at trial, the

12  moving party need not produce evidence negating or disproving every essential

13  element of the non-moving party's case. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317,

14  325 (1986). Instead, the moving party's burden is met by pointing out that there is

15  an absence of evidence supporting the non-moving party's case. <u>Id</u>. The moving

16  party is entitled to judgment as a matter of law when the non-moving party fails to

17  make a sufficient showing as to any one of the elements of the case with respect to

18  which the non-moving party has the burden of proof at trial. <u>Id</u>. at 322.

19  **IV.**   **<u>PLAINTIFF'S IDEA CLAIM FAILS AS A MATTER OF LAW AND</u>**
20       **<u>THE ADMINISTRATIVE HEARING DECISION SHOULD BE</u>**
          **<u>AFFIRMED.</u>**

21         **A.**    **<u>FAPE Standard Under the IDEA.</u>**

22      The IDEA is a comprehensive federal law that confers upon students with

23  disabilities the right to a FAPE. 20 U.S.C. §§ 1400 <u>et seq.</u>; <u>see also</u> Cal. Ed. Code

24  §§ 56000 <u>et seq.</u> Under the IDEA, a "FAPE" is defined as special education and

25  related services that are provided at public expense, meet the standards of the state

26  educational agency, and conform to the student's IEP. 20 U.S.C. § 1401(9). Under

27
   _____
28  [5] Here, there has been no request by either party to hear additional evidence for
    purposes of the appeal, and any request at this date would be untimely.

1  the IDEA, and corresponding state law, "Special education" is defined as specially

2  designed instruction that meets the unique needs of a child with a disability.  20

3  U.S.C. § 1401(29); Cal. Ed. Code § 56031(a).  Related services refers to those

4  supportive services <u>required</u> to assist a child with a disability to benefit from special

5  education. 20 U.S.C. § 1401(26)(A) (emphasis added).

6       In 1982, the United States Supreme Court issued its seminal ruling in which

7  it established the prevailing legal standard for determining what constitutes a

8  FAPE. <u>Rowley</u>, 458 U.S. 176 (1982). The standard established by the <u>Rowley</u>

9  Court is as follows:

10       Providing access to a 'free appropriate public education' is the

11       requirement that the education to which access is provided be

12       sufficient to confer <u>some educational benefit</u> upon the handicapped

13       child.....We therefore conclude that the 'basic floor of opportunity'

14       provided by the Act consists of access to specialized instruction and

15       related services which are individually designed to provide educational

16       benefit to the handicapped child." <u>Rowley</u>, 458 U.S. at p. 200

17       (emphasis added).

18       The Court went on to discuss the meaning of the terms "some educational

19  benefit" and "basic floor of opportunity," holding specifically that the Act "did not

20  require a school district to maximize the potential of a special education child. <u>Id</u>.

21  at 198.  The Court in <u>Rowley</u> further reasoned that the grading system and

22  advancement each year to higher grades "constitutes an important factor in

23  determining educational benefit." <u>Id</u>. at 202-203.  The Court in <u>Rowley</u> explains

24  that when students are mainstreamed, "the system itself monitors the educational

25  progress of the child" through "regular examinations, grades awarded and the

26  yearly advancement which is permitted for children who attain an adequate

27  knowledge of course material." <u>Id</u>. at 203.  <u>See also Gregory K</u>, 811 F.2d at 1314

28  ("Congress did not impose upon the States any greater substantive educational

1    standard than would be necessary to make such access meaningful.")

2         The legal standard adopted by the <u>Rowley</u> Court is commonly referred to as

3    the "educational benefit standard," and remains the prevailing standard for

4    determining if a FAPE has been provided to a disabled child, as recently affirmed

5    by the Ninth Circuit.  <u>J.L. v. Mercer Island School District</u>, 575 F.3d 1025, 1037-38

6    (9th Cir. 2009).

7         The primary mechanism for offering and providing individuals with

8    disabilities a FAPE is the IEP process.  School districts are required to develop an

9    IEP on no less than an annual basis, and set forth the student's present levels of

10   performance, annual goals and objectives in areas of unique educational need, and a

11   statement of the special education services and supports to be provided.  20 U.S.C.

12   § 1414; 34 C.F.R. § 300.320.  The IDEA also includes a complicated network of

13   procedural safeguards which school districts are required to comply with when

14   developing an IEP for a student.  20 U.S.C. § 1415; 34 C.F.R. §§ 300.324-328.  In

15   determining whether an IEP substantively complies with the "educational benefit

16   standard," an IEP must be evaluated according to the information available at the

17   time it was developed.  <u>Adams v. Oregon</u>, 195 F.3d 1141, 1149 (9th Cir. 1999).

**B.    THE ALJ's DECISION PROPERLY CONCLUDED THAT THE DISTRICT COMPLIED WITH ITS OBLIGATIONS UNDER THE IDEA.**

20        The ALJ's Decision in this matter already considered and determined the

21   primary issue in dispute herein.  Namely, whether K.M. requires CART services in

22   order to benefit from her educational setting.  The ALJ's Decision is entitled to

23   substantial deference by this Court because it meets the legal standard for the same,

24   based on its thorough analysis of the underlying factual and legal issues, and the

25   overall preponderance of the evidence in the administrative record in support of the

26   ALJ's Decision.  As such, the ALJ's Decision should be affirmed by this Court.

27

28

1.   **THE ALJ'S DECISION WAS THOROUGH AND CAREFUL AND IS THEREFORE ENTITLED TO SUBSTANTIAL DEFERENCE.**

The ALJ's Decision includes a thorough factual background summarizing the evidence presented at the DPH. AR001893-001912. In total, the ALJ issued eighty-three detailed factual findings. Id. The ALJ also actively participated in the proceedings, including the direct questioning of several witnesses. SUF, ¶14.

The ALJ carefully considered the testimony of twenty (20) witnesses, who testified over the course of seven hearing days, analyzing the weight to be afforded to the same. Id. Consequently, the ALJ's findings regarding the credibility, skill, and competence of these witnesses is entitled to substantial deference. Ms. S. ex rel. G v. Vashon Island Sch. Dist., 337 F.3d 1115, 1127 (9th Cir. 2003); see also Amanda J. v. Clark County Sch. Dist., 267 F.3d 877, 889 (9th Cir. 2001).

Here, the ALJ considered the testimony of several of K.M.'s teachers from Pioneer Middle School, and issued the following finding, which is entitled to substantial deference:

> "The teachers from Pioneer Middle School who testified at the hearing evidenced skill, dedication and innovation. They are clearly excellent instructors, and each had a high opinion of Student. Their testimony was persuasive as regards the benefit K.M. received from her public education, and the lack of her need for additional supports in the classroom." AR001902, ¶44.

The ALJ similarly considered the testimony of the teachers from Beckman High School, and issued the following finding, which is also entitled to substantial deference:

> "The instructors from Beckman High School who testified at the hearing evidenced skill and competence. Like their counterparts at Pioneer Middle School, they are manifestly excellent instructors, and each had a high regard for Student. Their testimony was persuasive as

1    regards the benefit Student was receiving from her high school
2    education, and the lack of need for additional supports in this setting."
3    AR001912, ¶83.

4        The ALJ also conducted a thorough and discrete analysis of the applicable
5    legal authority and how it applies to the facts proven at the DPH. See AR001915,
6    ¶¶16-18; AR001918-1919, ¶¶30-36; AR001921-1923, ¶¶44-49. Plaintiff alleges in
7    the Complaint that the Decision "did not properly consider K.M.'s right to direct
8    and equal access to instruction, discussion and communication at school" as alleged
9    to be required pursuant to Education Code sections 56000.5, 5634.1(b)(4), and
10   56345(d)(1)-(4). Complaint, p. 5, ¶13, ll. 11-16. However, the ALJ's Decision
11   analyzed in detail the federal and state requirements for developing an IEP for hard-
12   of-hearing students. AR001916-001918, ¶¶22-29. Based on this analysis, the
13   Decision determined that there are several federal and state prescribed special
14   factors which an IEP team is required to discuss and consider when developing an
15   IEP for a student who is deaf or hard-of-hearing, each of which is set forth in the
16   Decision. Id.; see also 20 U.S.C. § 1414(d)(3)(B)(iv); Cal. Ed. Code §§ 56000.5;
17   56345 (emphasis added). These special factors include a consideration of the
18   individual student's communication access, to peers, teachers and specialists
19   proficient in their language. 20 U.S.C. § 1414(d)(3)(B)(iv), Cal. Ed. Code §
20   56345(d)(2)-(3).

21       The ALJ's Decision correctly applied this legal authority to the facts of this
22   action and determined that the IEP teams discussed and considered each of the
23   requisite special factors when developing K.M.'s educational program. AR001918-
24   001919, ¶¶30-36. Plaintiff's argument that Education Code sections 56345 and
25   56000.5 create a substantive mandate to provide for "equal and direct access" to the
26   spoken word in the classroom is contradicted by the plain language of the very
27   statutes upon which Plaintiff relies. For example, Education Code section 56000.5,
28   which merely contains findings and declarations adopted by the Legislature, states

1   that students with hearing impairments should be educated in programs where they

2   have "direct and <u>appropriate</u> access to all components of the educational process,

3   including, but not limited to, recess, lunch and extracurricular social and athletic

4   activities." Cal. Ed. Code §56000.5(b)(7) (emphasis added). Nowhere does the

5   term "equal and direct access" appear in this provision.

6       Further, California Education Code section 56000.5, subdivision (e),

7   explicitly states that it is not the intent of the Legislature to set a higher standard for

8   educating individuals with disabilities than that standard set forth in the IDEA. As

9   such, the legal analysis set forth in the ALJ's Decision is correct when it evaluated

10  the substantive appropriateness of K.M.'s educational program through the prism of

11  the "educational benefit standard." On the other hand, Plaintiff's flawed

12  interpretation of these state statutory provisions was recently rejected by United

13  States District Court for the Southern District of California. <u>See</u> District's Request

14  for Judicial Notice ("RJN"), Ex. A, pp.5-10.

15      In total, the Decision meets the legal standard for a "thorough and careful"

16  decision, as well as a decision that is "careful, impartial and sensitive to the

17  complexities presented." <u>Seattle Sch. Dist. No. 1</u>, 82 F.3d at 1499 (9th Cir. 1996);

18  <u>Ojai Unified Sch. Dist. v. Jackson</u>, 4 F.3d 1467, 1471-73 (9th Cir. 1993). As such,

19  the Decision is entitled to substantial deference in this proceeding, and should be

20  affirmed on that basis. <u>Park</u>, 464 F.3d at 1031 (9th Cir. 2006).

21      **2.   <u>THE ALJ'S FINDINGS WERE SUPPORTED BY A</u>**

22  **<u>PREPONDERANCE OF THE EVIDENCE, IF NOT</u>**
    **<u>SUBSTANTIAL EVIDENCE.</u>**

23      For each of the findings adopted by the ALJ in the Decision, the

24  administrative record contains, at a minimum, a preponderance of the evidence in

25  support thereof. Therefore, the Decision should further be affirmed because of the

26  clear weight of the evidence that exists in support of the ALJ's findings.

27

28

1

      a.     The ALJ's Finding that the District Complied with its Obligations under the IDEA Regarding Assessment of K.M. Is Supported by a Preponderance of the Evidence.

2

3        It is not evident, from the face of the Complaint whether Plaintiff is

4   challenging any of the ALJ's findings with respect to this issue. However, there

5   was a volume of evidence presented at the DPH in support of the ALJ's

6   determination that the District properly assessed or proposed to assess K.M.

7   regarding the Parent's request for CART services. First, the Triennial Assessment

8   was thorough and complete, and included several findings directly relevant to

9   whether K.M. required CART services. AR002010-002028. Second, as part of the

10  Triennial Assessment, the District requested consent to conduct an educational

11  audiological assessment. AR002001, AR002052, AR002077. K.M.'s mother

12  ("Parent") provided written consent for this assessment; however, she refused to

13  cooperate with this assessment prior to the issuance of the Decision. Id.;

14  AR000109. Third, during the June 2009 IEP meetings, the IEP team proposed to

15  conduct an assessment of K.M. to further consider her need for CART services

16  once she transitioned to the high school setting. AR002048. On June 18, 2009, the

17  District provided an assessment plan to Parent seeking consent for this proposed

18  assessment. AR002052. Parent did not provide consent to this assessment until

19  December 1, 2009, nearly six months later, and even then restricted the scope of her

20  consent. AR000165-000166; AR002081.

21        Plaintiff failed to present any evidence disputing these findings at the DPH.

22  Simply put, Plaintiff cannot reasonably allege that the District improperly assessed

23  K.M.'s need for CART services when Parent refused to consent to the very

24  assessments offered by the District to determine whether this service was needed.

25  As such, the ALJ's finding that the District complied with its obligations to assess

26  K.M. with respect to whether she requires CART services should be upheld.

27

28

b.   <u>The ALJ's Second Finding that the District Properly
Considered K.M.'s Request for CART Services Is
Supported by a Preponderance of the Evidence</u>.

There is substantial evidence in the record establishing that the members of the IEP team properly discussed and considered K.M.'s request for CART services. As referenced above, an IEP team for a pupil who is hard-of-hearing is required to discuss and consider various special factors when developing the student's educational program.  20 U.S.C. §1414(d)(3)(B)(iv); *see also* Cal. Ed. Code § 56345(d).  Here, multiple members of K.M.'s IEP teams testified that at both the June and October IEP meetings, each one of these special factors was discussed and considered.  SUF, ¶22.  These discussions included a consideration of K.M.'s communication mode, communication needs in the classroom, academic level, ability to fully participate in all components of the classroom, and the services necessary to meet these needs and provide K.M. with a FAPE.  <u>Id</u>.

According to the Complaint, it does not appear that Plaintiff is disputing that these special factors were discussed and considered by K.M.'s IEP teams.  As such, based on the indisputable weight of the evidence in support of these findings, the ALJ's findings that the District complied with its procedural obligations to discuss and consider these special factors should also be affirmed.

c.   <u>The ALJ's Third Finding that K.M. did not Require
CART Services in order to Receive a FAPE Is Supported
by a Preponderance of the Evidence</u>.

Seven different classroom teachers from Pioneer Middle School and Beckman High School testified in the DPH regarding the educational benefit K.M. has received at school with her existing supports and accommodations.  SUF, ¶25. This evidence included testimony regarding K.M.'s average grades, her note taking and vocabulary skills which are comparable to her peers, her average to above-average level of classroom participation, her appropriate social interaction with her peers, her ability to communicate with teachers and peers, and her ability to fully participate in all components of her classes.  <u>Id.</u>  Some of these teachers also

1    detailed their opinions regarding why they believed K.M. could hear the teacher

2    and peers in the classroom, including during class discussions.  SUF, ¶¶25, 29.

3    Based on all of this information, the District clearly established that K.M. does not

4    require any additional services or supports to benefit or meaningfully access her

5    educational program.  See also AR000259-000260; AR000376, ll. 4-19.

6           Plaintiff did not rebut the majority, if not entirety, of the testimony and

7    opinions of K.M.'s teachers and assessors.  Although K.M. testified briefly at the

8    conclusion of the proceeding, with very limited exception, she did not contradict

9    the testimony of her teachers regarding her ability to participate in their respective

10   classes or her academic proficiency.  See AR001537-001568.  Rather, K.M.

11   testified to having "trouble" at times hearing in a few of her classes, but never

12   explained what she meant by "trouble" nor did Plaintiff present any evidence as to

13   how this alleged "trouble" impacted K.M.'s academic performance.  See

14   AR001538-1543, 001546-001551.  It would be reasonable to presume that if this

15   trouble K.M. was alleged to be having was impacting her receipt of educational

16   benefit, Plaintiff would have presented this evidence at the DPH.

17          Plaintiff also presented minimal evidence in support of the assertion that

18   K.M. requires CART services.  K.M.'s long-term auditory-verbal therapist, Karen

19   Rothwell-Vivian, testified that K.M. may benefit from CART services.  AR000894-

20   000902.  The ALJ carefully considered and weighed Ms. Rothwell-Vivian's

21   opinion, and held that her opinion was "less persuasive than the opinion of [K.M.'s]

22   teachers that [K.M.] does not require further supports in the classroom in order to

23   receive educational benefit."  AR001898 ¶28.  The ALJ explained that Ms.

24   Rothwell-Vivian's opinion was entitled to less weight because she had never

25   observed K.M. in the classroom and makes a standard recommendation for CART

26   whenever a deaf or hard-of-hearing client enters high school, without consideration

27   of the child's unique educational needs.  Id.; see also AR000935, ll. 2-12.

28          Plaintiff also presented the testimony of a CART provider, Sandy Eisenberg,

to testify regarding the nature of CART services.  See AR000300-000339.

Although Ms. Eisenberg testified to some generic benefits that CART may provide

to a hypothetical student, she had no knowledge of K.M., her classes, or her needs.

AR000318, AR000329-000330.  This was highlighted by the fact that the benefits

of CART testified to by Ms. Eisenberg were substantially inapplicable to K.M.

AR000310-000314.  Moreover, Ms. Eisenberg did not provide an opinion as to

whether K.M. required CART services.  AR000300-000309.

Finally, Plaintiff presented the testimony of Ms. Greenya, an audiologist who

had only met K.M. on one occasion and, like Ms. Eisenberg, also had no

information regarding K.M.'s educational program or academic performance.

AR000408-000455.  Ms. Greenya testified to the results of a hearing-in-noise test

she conducted and concluded that K.M. would have difficulty hearing in a

background of noise.  AR000433.  However, Ms. Greenya failed to take into

account, that the testing she conducted is not comparable to the noise level in a

typical classroom, but rather was that of a concert or loud party.  AR000982-

000984.  As such, Ms. Greenya testified that she would anticipate that K.M. would

do poorly at school based on her test results.  AR000453, ll. 8-24.  When in fact,

K.M. performs very well at school.  SUF, ¶25.  Most noticeably, Ms. Greenya did

not express any opinion regarding whether K.M. would require CART services.

AR000408-000455.  As such, the totality of the evidence Plaintiff presented in

support of CART services for K.M. did not establish that K.M. required CART

services in order to receive educational benefit, or otherwise.

In conclusion, due to the thorough, careful and impartial decision issued by

the ALJ, and the substantial evidence in the Administrative Record in support of the

Decision, Plaintiff is unable to establish any basis upon which the Decision is in

error and should be reversed.  As such, the District is entitled to Summary

Judgment on the Fourth Cause of Action (IDEA).

## V.   PLAINTIFF'S CLAIMS UNDER THE ADA AND SECTION 504 FAIL AS A MATTER OF LAW.

Based on the similarities between the ADA and Section 504, the District addresses Plaintiff's claims brought under these two statutes simultaneously.  As set forth below, Plaintiff cannot prevail on her ADA and Section 504 claims because (1) these claims are duplicative of her failed IDEA claim, and (2) Plaintiff cannot demonstrate that she has been excluded from participation or denied the benefits of her educational program because of her disability.

The ADA and Section 504 prohibit entities from excluding or otherwise denying the benefits of its services, programs, and activities on the basis of an individual's disability.  42 U.S.C. § 12132; 29 U.S.C. § 794(a).  The ADA and Section 504 have nearly identical legal standards, and courts generally analyze the provisions concurrently.  See Estate of Martin v. Cal. VA, 560 F.3d 1042, 1047 (9th Cir. 2009) ("Because '[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act,' we have consistently applied 'the same analysis to claims brought under both statutes,' and again do so here.") (citations omitted); Zukle v. Regents of University of California, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999).

To obtain relief under the ADA and Section 504, Plaintiff must show that (1) she is a handicapped individual; (2) she is otherwise qualified for participation in the program; and (3) she was excluded from participation in or denied the benefits of the services, programs, or activities of the District because of her disability.[6]  42 U.S.C. § 12132; 29 U.S.C. § 794(a); Estate of Martin, 560 F.3d at 1047; Zukle, 166 F.3d at 1045 n.11.

---

[6] The only distinction between the burden of proof for Section 504 and the ADA is that Section 504 applies only to public entities who receive federal funds.  Compare 42 U.S.C. 12132 with 29 U.S.C. § 794(a); see also Estate of Martin, 560 F.3d at 1047, fn. 7.

1

### A.     Plaintiff's Section 504 and ADA Claims Are Derivative of Plaintiff's Failed IDEA Claim.

2

3      ADA and Section 504 claims seeking the same relief and services as those

4  sought under the IDEA are derivative to the IDEA claim.  See Doe v. Arlington

5  County Sch. Bd., 41 F.Supp.2d 599, 608 (E.D. Va. 1999) (superseded by statute on

6  other grounds in N.L. v. Knox County Schs., 315 F.3d 688 (6th Cir. 2003)); D.F. v.

7  Western Sch. Corp., 921 F.Supp. 559, 573-74 (S.D. Ind. 1996).  Accordingly, if the

8  IDEA claim asserted by Plaintiff in this appeal fails, then the ADA and Section 504

9  claims necessarily fail as well.  D.F., 921 F.Supp. at 573-74; see also N.L., 315

10  F.3d at 695-696 (The 1986 amendments to the IDEA "[have] not been held to have

11  altered the prior holdings that more harm is required than a denial of free

12  appropriate public education to make out a section 504 claim."); Doe, 41 F.Supp.2d

13  at 608 (E.D. Va. 1999) (finding that where IDEA claims are subject to dismissal,

14  Section 504 claims based on same allegations must also be dismissed); Scanlon by

15  Birkner v. San Francisco Unified Sch. Dist., 1994 U.S. Dist. LEXIS 4817 (N.D.

16  Cal. 1994) ("Because the District complied with the requirements of the IDEA, the

17  District also satisfied the education requirements of the Rehabilitation Act.").

18      In D.F., parents of a student who presented with multiple disabilities filed a

19  suit alleging denial of FAPE under the IDEA and concurrent discrimination claims

20  under Section 504 and the ADA.  D.F., 921 F.Supp. at 563.  The court upheld the

21  administrative decision arising under the IDEA, concluding that the district's offer

22  of placement outside of the general education setting was appropriate.  Id. at 569-

23  571.  D.F. further argued that he had been discriminated against by being

24  improperly excluded from general education classes in violation of Section 504 and

25  the ADA.  Id. at 573-574.  In denying relief under these provisions, the court held

26  that "[o]ther courts entering summary judgment on IDEA claims have summarily

27  dismissed accompanying [Section 504] and ADA claims."  Id. at 574 (citations

28  omitted).  Thus, because the parents did not meet the burden of proving their IDEA

claims, their Section 504 and ADA claims also failed.  Id. see also Alex G. v. Board
of Trustees of Davis Joint Unified School District, 387 F.Supp. 2d 1119, 1124
(E.D. Cal. 2005) (the establishment of a violation of the IDEA is a necessary, but
not sufficient, component of bringing a valid discrimination claim under Section
504 in the special education context).

Here, Plaintiff's ADA and Section 504 claims are derivative of the failed
IDEA claim, and therefore should be summarily dismissed.  The Complaint itself
establishes that Plaintiff is raising the same claims pursuant to the ADA and
Section 504 as are being raised pursuant to the IDEA.  Specifically, Plaintiff alleges
that CART services are necessary to provide "direct and equal access" to the
spoken word pursuant to the California Education Code, IDEA, Section 504, the
ADA and Unruh.  Complaint, ¶3.  As such, Plaintiff is applying the same legal
standard (i.e. "direct and equal access to the spoken word") to each of these
statutory provisions, and is requesting the same relief based on this contention (i.e.
CART services).[7]  A further review of the Complaint indicates that Plaintiff is
relying on the same factual assertions in support of the First, Second and Third
Causes of Action brought pursuant to Section 504, the ADA and the Unruh Act
respectively, without any distinction as to the supporting facts therein.  In short,
Plaintiff's claims, whether asserted pursuant to the ADA, Section 504 or the IDEA
are duplicative.  However, in that the evidence has already established that K.M.
does not require CART services to receive a FAPE, this Court should summarily
dismiss the Section 504 and ADA claims as well.

Any other conclusion would be quite untenable.  A school district can not
logically be deemed, on the one hand, to fully comply with the federal law

---

[7] Plaintiff identified the singular benefit to which K.M. is alleged to being denied, in
violation of Section 504 and the ADA as follows:  "[a]ccess to words spoken in
class just like any other student without a hearing disability."  Decl. Brown, ¶6, Ex.
"C", attached thereto.

1    specifically designed to provide individuals with disabilities an appropriate public

2    education, including compliance with specific statutes governing the development

3    of such programs for hard-of-hearing individuals, and on the other hand, be found

4    to have discriminated against that student under a different federal law on the basis

5    of the same facts and claims.  It is because of the untenable nature of such a result

6    that the caselaw cited above has consistently found that in order to establish a claim

7    for discrimination under Section 504 and the ADA, something more than a denial

8    of FAPE must be proven.  Here, Plaintiff cannot establish a denial of FAPE under

9    the IDEA, and on that basis her Section 504 and ADA claims should also be

10   dismissed pursuant to this Motion.

**B.**   **Even if Plaintiff's Failure to Establish Her IDEA Claim is Not Determinative of the Section 504 and ADA Claims, Plaintiff Is Not Otherwise Able To Establish that She Has Been Denied Meaningful Access to Her Education.**

When examining whether a student is excluded from participation solely by

reason of a disability, the court will consider whether a school district provided

reasonable accommodations to the student.  Bird v. Lewis & Clark College, 303

F.3d 1015 (9th Cir. 2002); Cave v. E. Meadow Union Free Sch. Dist., 480 F. Supp.

2d 610, 640 (E.D.N.Y. 2007).  A reasonable accommodation does not require the

district to fundamentally alter its existing program.  28 C.F.R. § 35.130(b)(7);

Alexander v. Choate, 469 U.S. 287, 300 (1985); Bird, 303 F.3d at 1020.  However,

any reasonable accommodation must provide the individual with meaningful access

to the program or service.  Bird, 303 F.3d at 1020; Wiles and Bond v. Department

of Education, State of Hawaii, 593 F.Supp. 2d 1776 (D. Haw. 2008).  Thus, to

succeed on her claims under Section 504 and the ADA, Plaintiff must show that the

District denied her meaningful access to her educational program.

Further, Plaintiff must prove more than a mere difference and/or inequality in

the impact between herself and other non-disabled peers in the classroom.  In

Crowder, the Ninth Circuit reasoned "that judicial review over each and every

1   instance of disparate impact discrimination would be overly burdensome."

2   Crowder, 81 F.3d, 1480, 1484 (9th Cir. 1996) (citing Alexander, 469 U.S. 287; see

3   also Hunsaker v. Contra Costa County, 149 F.3d 1041 (9th Cir. 1998).  Instead of

4   classifying every instance of discrimination as deliberate or disparate impact, the

5   Ninth Circuit instead analyzed "whether disabled persons were denied meaningful

6   access to state-provided services."  Crowder, 81 F.3d at 1484.

7        In the educational context, meaningful access does not require access to

8   every potential aspect of a program or service.  See Bird, 303 F.3d 1015; Wiles and

9   Bond, 593 F.Supp. 2d 1776; Cave, 480 F. Supp. 2d at 640.  For example, in Bird,

10   the plaintiff alleged disability discrimination under both Section 504 and the ADA

11   because she was not able to access all aspects of an overseas post-secondary

12   education program due to restrictions from her wheelchair.  Bird, 303 F.3d at 1017-

13   1019.  The college argued that the mere fact that not all components of the program

14   operated the way student would have preferred did not mean that the college had

15   failed to reasonably accommodate the student.  Id. 1020-1021.  The Ninth Circuit

16   held that "reasonableness depends on the circumstances of each case, and requires a

17   'fact-specific individualized analysis of the disabled individual's circumstances and

18   the accommodations that would allow [him] to meet the program's standards.'" Id.

19   at 1020, (citing Vinson v. Thomas (9th Cir. 2002) 288 F.3d 1145, 1154).  In Bird,

20   the student's participation was determined to be meaningful because she "enjoyed

21   many of the benefits offered by the program."  Id. at 1021.

22        In Wiles, the Hawaii District Court considered meaningful access under

23   Section 504 in the context of K-12 public education for a special education student.

24   Wiles, 593 F. Supp. 2d 1776.  Although the student's IEP was not implemented on

25   some occasions, the services that were implemented were held to provide the

26   student with meaningful access.  Id. at 1180.  The court clarified that the failure to

27   implement an IEP does not constitute a denial of meaningful access per se.  Id. at

28   1181, fn. 4.  Rather, the meaningful access inquiry under Section 504 was held to

1  focus on the opportunities given to disabled individuals, rather than progress. Id.;

2  see also Mark H. v. Lemahieu, 513 F.3d 922, 938 (9th Cir. 2008). Relying on the

3  testimony of the student's teachers and service providers, the court found that the

4  evidence overwhelmingly showed the student "enjoyed the benefits" of his public

5  education and therefore the district provided meaningful access. Id. at 1182-1183.

6       In Cave, 480 F. Supp. 2d at 640 , the court considered whether a school

7  district violated Section 504 and the ADA by prohibiting a hard-of-hearing student

8  from bringing his service dog onto school grounds. The student had profound

9  hearing loss, but, with the use of cochlear implants, the loss was reduced to mild.

10 The district provided the student with an FM transmitter, a sign language

11 interpreter, a note taker, closed captioning on videos and films, and preferential

12 seating at the front of the class. 480 F.Supp.2d. at 636-637. During his ninth grade

13 school year, the student wanted to have a service dog accompany him to school to

14 help him focus on the spoken word in the classroom. Id. at 615. The court

15 considered whether the district had provided the student with reasonable

16 accommodations, noting that the district is not required to provide the student "with

17 every accommodation which he may request." Id. at 640 (citations omitted). In the

18 court's view, the accommodations already provided by the district were

19 "extraordinary." Id. at 641. Notably, even though he could not hear every spoken

20 word, the student was deemed to have "meaningful access" because student was

21 successful in school with accommodations that allowed him to participate in the

22 "mainstream" of school life. Id.(emphasis added.)

23      Here, Plaintiff is unable to meet her burden of proof to show that she has

24 been denied meaningful access to her educational program. The administrative

25 record from the DPH, including the numerous factual and legal findings set forth in

26 the Decision, establish that Student's existing educational program at Beckman is

27 providing her with "meaningful access" to her educational program. Through this

28 date, K.M.'s teachers continue to uniformly report that K.M. is fully participating in

each component of her classes, is accessing the curriculum, achieving grade level standards or above, and is an active and included participant in each of her classes. SUF, ¶26.  In short, K.M. is participating in the "mainstream" of school life both in the classroom, and through her active participation in extra-curricular activities. SUF, ¶¶8-12.  As such, there is no reasonable basis upon which it can be found that the District has discriminated against K.M. based solely on her disability.  Based on K.M.'s continued success in her educational setting, as well as the numerous supports, services, on-going monitoring and accommodations being implemented for K.M., Plaintiff is unable to establish that she has been denied meaningful access to her education.  Accordingly her Section 504 and ADA claims fail.

## C.   Plaintiff Cannot Prove a Basis for an Award of Damages Because Plaintiff Cannot Establish the District Acted With Deliberate Indifference Towards K.M.

In the unlikely event Plaintiff is able to establish a viable Section 504 or ADA claim, Plaintiff is not able to establish a viable claim for damages.  To obtain monetary damages under Section 504 or the ADA, Plaintiff must prove that the District acted with deliberate indifference.  Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001) (requiring deliberate indifference under the ADA); Mark H., 513 F.3d at 938 (9th Cir. 2008) ("[W]e have held that plaintiffs must prove a mens rea of 'intentional discrimination,' to prevail on a § 504 claim, but that that standard may be met by showing 'deliberate indifference'...."); Alex G., 387 F. Supp. 2d at 1124 (requiring deliberate indifference under Section 504).  Deliberate indifference requires knowledge that harm to a federally protected right is substantially likely to occur and a failure to prevent that likelihood. Id., at 1124, citing Duvall, 260 F.3d at 1139).  In the special education context, Plaintiff "must show that the educational decisions relating to the student were so inappropriate as to constitute either bad faith or gross misjudgment." Id.

Here, by virtue of the finding that the District has complied with its obligations under the IDEA, it simply cannot be the case that the District's actions

1    are compliant with the IDEA, on the one hand, and constitute deliberate

2    indifference on the other.  Further, the District's efforts to monitor and oversee

3    K.M.'s educational program have been diligent, and are entirely inconsistent with a

4    finding of deliberate indifference.  AR001578-001581; AR001588-001589;

5    Declaration of Misty Jones, ¶¶8-17; Decl. Rasmussen, ¶¶9-19. Moreover, K.M.

6    herself has told staff on numerous occasions that she can hear in the classroom.

7    SUF, ¶¶27-31.  The District cannot be penalized for its reliance on these

8    admissions.  As such, a reasonable fact finder could not determine that the District's

9    actions amount to deliberate indifference, and on that basis summary judgment

10   should be granted to the District with respect to Plaintiff's claims for damages.

11   **VI.   PLAINTIFF'S CLAIMS UNDER THE UNRUH CIVIL RIGHTS ACT**

12   **        FAIL AS A MATTER OF LAW AND SHOULD BE DISMISSED.**

             Plaintiff's discrimination claims brought pursuant to the Unruh Act are

13   seemingly identical to Plaintiff's IDEA, Section 504, and ADA claims.  Thus, as

14   Plaintiff's claims fail as a matter of law under Section 504 and the ADA, they

15   similarly must fail under the Unruh Act.  As such, Plaintiff is not entitled to any

16   damages under the Unruh Act as sought for herein.  Notwithstanding this fact,

17   Plaintiff's Third Cause of Action is further flawed, in that it fails to state a claim

18   upon which relief can be granted, and Plaintiff has not complied with the requisite

19   state procedures for asserting a claim for monetary damages from a public entity.

20   **A.      Plaintiff's Third Cause of Action Fails to State a Claim Upon**

21   **         Which Relief Can Be Granted.**

22           Pursuant to California Government Code section 945.4, a plaintiff cannot

23   pursue an action for damages against a public entity without first complying with

24   the Government Claims Act (formerly Tort Claims Act) ("Act").  Cal. Gov. Code

25   § 945.4; see generally Cal. Gov. Code § 945 et seq.; see also Ortega v. O'Connor,

26   764 F.2d 703, 707 (9th Cir. 1985), rev'd on other grounds, 480 U.S. 709, (1987);

27   Konig v. State Bar of Cal., 2004 U.S. Dist. LEXIS 19498 (N.D. Cal. 2004) (holding

28   that the Tort Claims Act "requirement applies in federal court").  Here, Plaintiff

1  seeks monetary damages from the District for alleged violations of the Unruh Act,

2  codified at California Civil Code section 51 et seq. See Compl. ¶¶ 28-33, p. 10

3  (prayer for general and special damages).

4       When filing a civil action for damages against a public entity, a plaintiff is

5  required to plead facts showing or excusing compliance with the Act. Butler v.

6  L.A. County, 617 F. Supp. 2d 994, 1001 (C.D. Cal. 2009) ("Plaintiffs must 'allege

7  facts demonstrating or excusing compliance with the claim presentation

8  requirements.'" quoting State of California v. Superior Court ("Bodde"), 32 Cal.

9  4th at 1239, 1243 (2004)); see also D.K. v. Solano County Office of Educ., 667 F.

10  Supp. 2d 1184, 1195 (E.D. Cal. 2009). Since the District is a public entity, Plaintiff

11  was required to plead either compliance or excusal with the Act as one element of

12  the Third Cause of Action. See id. Plaintiff has failed to meet this requirement.

13  See Compl. ¶¶ 28-33. As such, Plaintiff's Fourth Cause of Action fails to state a

14  claim upon which any relief can be granted.

15  **B.    Alternatively, Plaintiff Is Barred From Seeking Damages From the District Pursuant to the Unruh Act for Failing to Substantively Comply with the Government Claims Act.**

16

17       In addition to failing to state a claim, Plaintiff also failed to comply with the

18  substantive requirements of the Act, which further bars Plaintiff's claim for

19  damages pursuant to the Unruh Act. Claims against public entities are subject to a

20  motion for summary judgment when an individual fails to comply with the

21  applicable requirements of the Act. D.K., 667 F.Supp. 2d at 1199. Here, Plaintiff

22  commenced the instant action on July 7, 2010. Plaintiff did not file a claim ("Claim

23  Form") with the District until October 25, 2010, more than three months later, and

24  sixteen (16) months after the date the claim accrued. Declaration of Leticia

25  Barrozo ("Decl. Barrozo"), ¶5, Ex. "A." The Act requires presentment of claims

26  for personal injury within six months. Cal. Gov. Code § 911.2. Therefore, Plaintiff

27  did not meet the applicable statutory deadline when filing her Claim Form with the

28  District. Accordingly, on November 10, 2010, the District denied Plaintiff's claim

1    because it was not presented within six months of the date upon which it accrued.

2    Decl. Barrozo, ¶6, Ex. "B."

3         On October 25, 2010, Plaintiff also filed an application with the District to

4    file a late claim, further acknowledging the untimely nature of the underlying claim.

5    Decl. Barrozo, ¶, Ex. "A."  However, applications to file late claims only apply to

6    those claims required to be filed within six months, and still must be filed "within a

7    reasonable time not to exceed one year after the accrual of the cause of action...."

8    Cal. Gov. Code § 911.4(b).  Here, Plaintiff sought leave to file a late claim over

9    sixteen months after her claim had accrued, and therefore further meet the statutory

10   timelines for seeking leave to file a late claim with the District.  On December 14,

11   2010, the District denied Plaintiff's application to file a late claim.  Decl. Barrozo,

12   ¶¶9-10, Exs. "D" and "E."

13        When a public entity denies leave to file a late claim, an individual may

14   petition a state court for an order relieving him and/or her from the requirements of

15   Section 945.4 of the Act.  Cal. Gov. Code § 946.6(a).  However, Plaintiff never

16   petitioned the state court for relief from the requirements of Section 945.4.  See

17   Decl. Barrozo, ¶11. As such, Plaintiff's request for damages must fail.

18   **VII.   CONCLUSION.**

19        Based on the foregoing, the District hereby requests that summary judgment

20   be granted in favor of the District.

21   Dated:    April 4, 2011                BEST BEST & KRIEGER LLP

22

23                                          By: /s/ Jennifer C. Brown

24                                          Jennifer C. Brown
                                            Daniel S. Roberts
25                                          Megan M. Moore
                                            Attorneys for Defendant,
26                                          TUSTIN UNIFIED SCHOOL
                                            DISTRICT

27

28